Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, to receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. All Industrial Commission Forms should be made a part of the record.
2. The issues to be determined by this hearing are as follows:
 a) Whether defendant George Trapp (or other defendants) are subject to the North Carolina Workers' Compensation Act and therefore subject to the jurisdiction of the North Carolina Industrial Commission.
 b) Whether there was an employee-employer relationship between plaintiff and defendants;
 c) What was plaintiff's average weekly wage on 3 January 1997;
 d) Whether the plaintiff sustained an injury by accident arising out of and in the course of his employment, and if so, what, if any, benefits is he entitled?
 e) To what penalties, if any, are defendants subject?
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the findings of fact of the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. Defendants George Trapp, David Beauchemin and John Schuck were non-insured on 3 January 1997.
2. On 3 January 1997, plaintiff was an eighteen year old male who came to the United States in 1995 from Honduras and speaks a little English. Plaintiff did not posses an Immigration "Green Card" or Social Security number. Plaintiff's occupation was a roofer and he originally worked in Texas, and then Indiana, prior to coming to North Carolina in the fall of 1996.
3. The plaintiff and his two friends, Sammy Morag and Estephon Morag, came to North Carolina in October, 1996, because of the abundance of construction work available due to the damage caused by two hurricanes.
4. The plaintiff worked for two companies a couple of months each until meeting John Schuck in January, 1997.
5. Defendant John Schuck hired plaintiff and his two friends to work as roofers on two homes damaged by Hurricane Fran.
6. Defendant George Trapp hired John Schuck to fix the roof of a home David Beauchemin had under construction, which had been damaged by Hurricane Fran in September, 1996.
7. David Beauchemin lived in New Jersey and hired George Trapp to design a home on Topsail Beach. Mr. Beauchemin and Mr. Trapp entered into a contract whereby Mr. Trapp would hire contractors to complete the work necessary for construction of the home. Although Mr. Trapp referred to himself as a consultant, his duties and responsibilities are the same as a general contractor. Mr. Trapp hired and negotiated with the subcontractors; he wrote the checks, and in one instance fired a subcontractor whose work was unsatisfactory. Mr. Trapp visited the job site to oversee the work the subcontractors were doing. The contract further required all contractors who worked on the home to have workers' compensation insurance.
8. Mr. Trapp had been working as a house designer or "consultant" for approximately two years at the time of hearing. Mr. Trapp had also acquired his general contractors license approximately two years prior to hearing.
9. Mr. Schuck represented to Mr. Trapp, when hired, that he was licensed and insured. Mr. Schuck drove a truck with a sign that read "Regional Roofing Contractors". Mr. Trapp did not ask Mr. Schuck for a certificate of insurance prior to allowing Mr. Schuck and his crew to work on Mr. Beauchemin's home.
10. Within a couple of days of when Mr. Trapp hired Mr. Schuck, Mr. Trapp found out he was dealing with the individual John Schuck and not Regional Roofing Contractors. Prior to 3 January 1997, Mr. Trapp took Mr. Schuck to an insurance agency to inquire about workers' compensation insurance. Although Mr. Trapp knew Mr. Schuck did not have workers' compensation insurance, he still allowed Mr. Schuck and his crew to continue roofing Mr. Beauchemin's house. Mr. Trapp was aware prior to 3 January 1997 that plaintiff was working for John Schuck as a roofer on Mr. Beauchemin's home.
11. When John Schuck hired plaintiff, he agreed to pay him $12.00 an hour cash for working at least ten (10) hours a day, six (6) days a week. The plaintiff was only hired to roof two houses. There was no agreement between John Schuck and the plaintiff as to employment beyond the roofing of the two homes. Plaintiff's employment with John Schuck was "casual" in that it was unpredictable (plaintiff only worked when weather permitted), sporadic and brief in nature. However, plaintiff's employment as a roofer was in the course of trade, business or occupation of defendant John Schuck in that Mr. Schuck and plaintiff were hired as roofers.
12. After the hurricane, construction workers were paid at wages higher than normally earned. For instance, prior to the storm, the common fee paid to a roofer was $18.00 per square installed. After the storm, the amount reached as high as $150.00 per square. The maximum amount defendant Trapp would pay was $40.00 a square.
13. On 3 January 1997 plaintiff was working for defendant John Schuck roofing defendant Beauchemin's beach home. The home was three stories high. Felt or roof papers were placed on the forklift to lift the roofing materials to the roof over the third floor. Plaintiff rode up on the forklift as well. When the forklift reached the third floor, it fell and the plaintiff fell from the third floor, injuring the left side of his upper chest where the neck joins the shoulder and the back.
14. Although plaintiff had never ridden a forklift up to a roof prior to 3 January 1997, plaintiff had seen it done before. On 3 January 1997 the only way plaintiff could get up on the roof to place the felt was to ride the forklift. At the time the plaintiff fell, he was performing duties for the benefit of and in furtherance of the interests of his employer, defendant John Schuck.
15. As a result of plaintiff's work-related injury on 3 January 1997, plaintiff was transported by ambulance and spent five days in Onslow Memorial Hospital. As a result of plaintiff's fall, plaintiff sustained a fracture of his distal left radius and contusions to his abdomen and chest.
16. Following plaintiff's discharge from Onslow Memorial Hospital, he sought follow-up treatment with Dr. Jeffrey Gross, an orthopaedist in Jacksonville.
17. On 12 June 1997 Dr. Gross assigned a ten percent (10%) permanent partial disability rating to plaintiff's left arm. At that time, plaintiff still had numbness along the dorsum of the index finger, pain along the left flank area extending into the testicle which Dr. Gross indicated as a possible hernia. Plaintiff was referred to Dr. Lenox Williams for the possible hernia.
18. As a result of plaintiff's work-related injury on 3 January 1997, plaintiff has been unable to work or earn any wages since 4 January 1997 and continuing through the date of hearing before the Deputy Commissioner. His left arm still gives him problems and he cannot lift anything heavy. Plaintiff's limited ability to understand English, coupled with his exclusive background in construction work, has contributed to his inability to find work since his compensable injury.
19. On 3 January 1997 plaintiff had only worked for defendant John Schuck for two days. Plaintiff has had no contact with defendant John Schuck since the work-related injury on 3 January 1997. As of the date of hearing before the Deputy Commissioner, defendant Schuck had not paid plaintiff the $180.00 owed to plaintiff for two days work prior to the work-related injury.
20. Before plaintiff worked for defendant John Schuck, plaintiff had been employed by other roofing subcontractors. Immediately prior to going to work for defendant John Schuck, plaintiff had earned $100.00 per day, an average of six days a week working as a roofer for L.E. Crawford in the North Carolina coastal area.
21. Plaintiff did not work for defendant John Schuck for fifty-two (52) weeks prior to 3 January 1997. The agreement between plaintiff and defendant John Schuck was for $12.00 per hour, ten (10) hours per day and six (6) days per week. Plaintiff was only hired to roof two houses. Although there is insufficient evidence to determine exactly how long this job would take, it would have taken longer than three days to complete. However, defendant John Schuck owed plaintiff $180.00 for two (2) days work completed prior to plaintiff's injury. This does not add up to $120.00 per day. Calculating plaintiff's average weekly wage by dividing his amount earned, though not paid, for the two (2) days he did work for defendant, would not obtain a result that is fair and just to both parties.
22. An average weekly wage of $100.00 per day, six days a week, equaling $600.00 per week is more fair and just and most nearly approximates an average weekly wage for plaintiff at the time of his injury. This average weekly wage of $600.00 per week yields a compensation rate of $400.00 per week.
23. On 3 January 1997, defendant George Trapp did not have workers' compensation insurance. Additionally, Mr. Trapp had not obtained workers' compensation insurance by the date of hearing because he alleged he was not a "general contractor," only a consultant. At the time of hearing Mr. Trapp was still engaged in his self-employment where he designs homes and then handles the majority of the aspects of subcontracting the work out to be completed for the home-owner.
24. During the time the plaintiff and his friends worked for John Schuck doing roofing, from 1 January 1997 through 3 January 1997, defendant John Schuck had three (3) or more employees. There is insufficient evidence to determine whether John Schuck had three (3) or more employees after plaintiff's injury on 3 January 1997.
25. Defendant David Beauchemin was the home owner who hired George Trapp to handle the construction work for his home. Defendant David Beauchemin is not subject to or bound by the North Carolina Workers' Compensation Act.
26. Once he became aware John Schuck did not have workers' compensation insurance, George Trapp had the ability to stop John Schuck from working on the Beauchemin home without the insurance. If purchased, this insurance would have covered plaintiff's injury sustained on 3 January 1997.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Although defendant George Trapp did not regularly employ three (3) employees on 3 January 1997, he acted as a general contractor and hired defendant John Schuck as a subcontractor without first obtaining a certificate of workers' compensation insurance and therefore would be liable for benefits to plaintiff. Consequently, the Industrial Commission has jurisdiction over this claim. N.C. Gen. Stat. § 97-19.
2. On 3 January 1997, plaintiff was a casual employee of defendant John Schuck, but the work plaintiff performed was in the course of the trade, business or occupation of his employer and the casual nature of the employment alone would not exclude plaintiff from benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2); Boyd v. Mitchell, 48 N.C. App. 219 (1980).
3. On 3 January 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer John Schuck. N.C. Gen. Stat. § 97-2(6).
4. As a result of his 3 January 1997 compensable injury, plaintiff is entitled to temporary total disability compensation at a rate of $400.00 per week for the period from 4 January 1997 through the present and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants provide all medical treatment arising from his injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
6. Defendant David Beauchemin was not subject to or bound by the North Carolina Workers' Compensation Act on 3 January 1997, therefore, the Commission has no jurisdiction over him.
7. Defendant John Schuck was subject to and bound by the North Carolina Workers' Compensation Act on 3 January 1997, as he had three (3) or more employees on that date.
8. Any person with the ability and authority to bring an employer in compliance with its legal obligation to secure workers' compensation insurance who willfully and intentionally refuses or neglects to do so, may be assessed a civil penalty by the North Carolina Industrial Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employer's employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. Defendant George Trapp had the ability and authority to stop John Schuck and his crew from working until Schuck acquired workers' compensation insurance. The plaintiff suffered a compensable injury after George Trapp discovered Schuck did not have workers' compensation insurance. George Trapp willfully neglected to bring defendant John Schuck into compliance and can be assessed a civil penalty in an amount up to one hundred percent (100%) of the amount of compensation due to the plaintiff. N.C. Gen. Stat. § 97-94(d).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to an attorney fee herein approved, defendant shall pay to plaintiff temporary total disability compensation at a rate of $400.00 per week, from 4 January 1997 through the date of hearing before the Deputy Commissioner and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum.
2. As a result of John Schuck's failure to purchase workers' compensation insurance, he shall pay a $50.00 per day fine for each day beginning 1 January 1997 to 3 January 1997, the date of plaintiff's accident. There is insufficient evidence to determine whether defendant John Schuck was subject to the Workers' Compensation Act after 3 January 1997. This amount shall be made by a check payable to the North Carolina Industrial Commission.
3. As a result of defendant George Trapp's failure to bring defendant John Schuck in compliance with his legal obligation to secure workers' compensation insurance, George Trapp shall pay a civil penalty in the amount of $10,000.00 (ten thousand dollars). This amount shall be made by a check payable to the North Carolina Industrial Commission and sent directly to Kay Emanuel at the Industrial Commission, subject to the waiver below.
4. If the defendants pay the compensation awarded in Paragraphs 1 and 5 herein within ten (10) days of receipt of this Order, then the Full Commission hereby waives the remaining amount assessed in Paragraph 3 of this Opinion and Award.
5. Defendants shall pay all medical expenses incurred by plaintiff as a result of his 3 January 1997 injury by accident for so long as such examinations, evaluations and treatments may be reasonably necessary to effect a cure, give relief or tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted to the Industrial Commission in accordance with North Carolina Industrial Commission procedures.
6. A reasonable attorney fee in the amount of twenty-five percent (25%) of the lump sum due plaintiff awarded in Paragraph 1 of this AWARD is due plaintiff's counsel. This amount shall be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel. Henceforth, every fourth compensation check shall be paid directly to plaintiff's counsel.
7. Defendants George Trapp and John Schuck are jointly and severally liable for the sums due under paragraphs 1 and 5 of this Award and for the costs due the Commission; however, payment of said award shall be exhausted against Defendant-Schuck first and then Defendant-Trapp.
 *********** ORDER
This case is referred to the Fraud Section of the Industrial Commission for further action.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER